# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANDRE WATTERS, ) | |
|     *also known as* CECIL WALLACE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:06-cv-1522-UWC-PWG |
| ) | |
| OFFICER PRICE, et al., ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM OF OPINION

The plaintiff, Andre Watters, hereinafter referred to as "the plaintiff," has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at the Calhoun County Jail in Anniston, Alabama. The plaintiff names as defendants Officers Daniel Price, Tina Chapa, Jessyka Curvin, and the Calhoun County Commission. He seeks monetary and declaratory relief.

On September 29, 2006, the court entered an Order for Special Report directing that a copy of the complaint in this action be forwarded to the defendants and requesting that they file a Special Report addressing the factual allegations of the plaintiff's complaint. (Doc. 8.) The defendants were advised that the Special Report should be submitted under oath or accompanied by affidavits and, if appropriate, would be considered as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 8.) By the same Order, the plaintiff was advised that after he received a copy of the Special Report submitted by the defendants, he should file counter-

affidavits if he wished to rebut the matters presented by the defendants in the Special Report. (Doc. 8.) The plaintiff was further advised that such affidavits should be filed within twenty (20) days of receiving a copy of the defendants' Special Report. (Doc. 8.)

On November 28, 2006, Defendants Chapa and Curvin filed a Special Report accompanied by affidavits and pertinent documents. (Doc. 17.) On May 18, 2007, Defendant Price filed a Special Report which was also accompanied by affidavits and pertinent documents. (Doc. 25.) The court subsequently construed the Special Reports as motions for summary judgment and the plaintiff was notified that he would have twenty (20) days to respond to the motions for summary judgment, filing affidavits or other material if he chose. (Doc. 26.) The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (Doc. 26.) *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On August 9, 2007, the plaintiff filed a response to the defendants' motions for summary judgment. (Doc. 34.)

### I.  SUMMARY JUDGMENT STANDARD.

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once that initial burden has been carried, however, the non-

moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d at 1532 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## II.  FACTUAL ALLEGATIONS.[1]

**A.  Plaintiff's Allegations.**

The plaintiff states that on June 27, 2006, he was assaulted by jail officers while in the "detox" cell at the Calhoun County Jail. (Compl. at 4.) Specifically, the plaintiff alleges that Sergeant Daniel Price kicked him in the stomach, leaving a scar, and choked him as Officer Jessyka Curvins handcuffed his hands behind his back. (Compl. at 3-4.) The plaintiff claims that Sergeant

---

[1] The following facts are undisputed or, if disputed, construed in a light most favorable to the plaintiff.

Price then put him in a headlock as Officers Curvins and Tina Chapa held him down. (Compl. at 4.) He asserts that he was almost unconscious when the defendants threw him to the floor. (Compl. at 4.) The plaintiff alleges that he filed a grievance regarding the incident but did not receive a response from jail officials. (Compl. at 2.)

**B.      Defendants' Allegations.**

      1.      Sergeant Daniel Price.

Defendant Price states that on the date of the incident, he informed the plaintiff that due to the large number of inmates confined in the Calhoun County Jail, the plaintiff would be housed in the "detox" cell that night and then possibly moved to general population once some inmates had been released. (Doc. 25, Ex. K, Price Aff. at 1.) Price contends that the plaintiff "expressed strong disagreement" with this arrangement and stated that Price and other officers would have to physically put him in the "detox" cell. (Doc. 25, Ex. K, Price Aff. at 2.) Price alleges that he "explained repeatedly" the situation to the plaintiff and asked him to cooperate and not make the process difficult. (Doc. 25, Ex. K, Price Aff. at 2.)

Defendant Price claims that eventually, he and other officers had to escort the plaintiff into the "detox" cell. (Doc. 25, Ex. K, Price Aff. at 2.) Price asserts that while he was in the cell, the plaintiff charged toward him with balled fists. (Doc. 25, Ex. K, Price Aff. at 2.) Price states, "I extended my leg to maintain distance between myself and the plaintiff, while simultaneously trying to close the door of the cell." (Doc. 25, Ex. K, Price Aff. at 2.) Price contends that the plaintiff grabbed his foot and lower leg and, in an attempt to free his leg from the plaintiff's grasp, he struggled with the plaintiff. (Doc. 25, Ex. K, Price Aff. at 2.) Price states that with the assistance of other officers, they were able to "maneuver the Plaintiff to the floor and gain control of him." (Doc.

25, Ex. K, Price Aff. at 2.) Price asserts that the plaintiff's hands were then handcuffed behind his back and he was escorted to the area of the jail which houses violent inmates, placed on a cot, and the restraints were removed. (Doc. 25, Ex. K, Price Aff. at 2.)

Defendant Price argues that he used only the minimum amount of force necessary to protect himself, the security interests of the jail, and the safety of the jail staff and inmates. (Doc. 25, Ex. K, Price Aff. at 2.) He contends that once the plaintiff was restrained and the threat was over, no additional force was used against the plaintiff. (Doc. 25, Ex. K, Price Aff. at 2.) He claims that at no time during or after the incident did he observe any injury to the plaintiff or any condition that would indicate a need for medical attention. (Doc. 25, Ex. K, Price Aff. at 2.) Defendant Price states that, pursuant to Calhoun County Jail Policy and Procedure, he directed the Jail Medical Officer and Jail Nurse to evaluate the plaintiff and determine whether medical attention was necessary. (Doc. 25, Ex. K, Price Aff. at 2.)

2. <u>Officer Tina Chapa</u>.

Defendant Chapa states that on June 28, 2006, she was on duty in the Calhoun County Jail, patrolling several areas when a call for assistance in the booking area was announced over the radio.[2] (Doc. 17, Ex. I, Chapa Aff. at 2.) Chapa contends that she responded immediately to the booking area. (Doc. 17, Ex. I, Chapa Aff. at 2.) She alleges that when she arrived, Sergeant Price and Corporal Curvin were "struggling to gain control of the Plaintiff." (Doc. 17, Ex. I, Chapa Aff. at 2.) Chapa asserts that the plaintiff refused to comply with repeated orders to surrender and get on the floor. (Doc. 17, Ex. I, Chapa Aff. at 2.) She claims she assisted Price and Curvin in gaining control

---

[2] The plaintiff alleges that the incident complained of took place on June 27, 2006. However, it appears from the documents contained in the defendants' Special Reports that the plaintiff was booked into the Calhoun County Jail on June 28, 2006.

of the plaintiff long enough for him to be handcuffed. (Doc. 17, Ex. I, Chapa Aff. at 2.) Chapa contends that once the plaintiff was subdued and handcuffed, he was escorted to the area of the jail which houses violent inmates, placed on a cot, and the restraints were removed. (Doc. 17, Ex. I, Chapa Aff. at 2.)

Defendant Chapa maintains that she used only the minimum amount of force necessary to protect herself and the safety and security interests of the jail, including the jail staff and inmates. (Doc. 17, Ex. I, Chapa Aff. at 2.) She asserts that once the plaintiff was restrained and the threat was over, no additional force was used. (Doc. 17, Ex. I, Chapa Aff. at 2.) Chapa contends that at no time during or after the incident did she observe any injury to the plaintiff or any condition that would indicate a need for medical attention. (Doc. 17, Ex. I, Chapa Aff. at 2.) She also asserts that the plaintiff did not request medical attention at any point during or after the incident. (Doc. 17, Ex. I, Chapa Aff. at 2.)

      3.    <u>Officer Jessyka Curvin</u>.

Defendant Curvin states that on June 28, 2006, she was outside the "detox" cell when a struggle began between Defendant Price and "someone inside the cell." (Doc. 18, Curvin Aff. at 2.) She states, "Despite our orders to the Plaintiff to surrender and to get on the floor, he continued behaving violently and refused to comply with our repeated demands." (Doc. 18, Curvin Aff. at 2.) Curvin asserts that as a result of the plaintiff's refusal to obey orders, she and Price tried to maneuver the plaintiff to the floor. (Doc. 18, Curvin Aff. at 2.) She contends that the plaintiff resisted their efforts to gain control of him, all the while "yelling and kicking wildly." (Doc. 18, Curvin Aff. at 2.) She notes that shortly thereafter, Defendant Chapa responded to the call for assistance. (Doc. 18, Curvin Aff. at 2.) Defendant Curvin claims that the three of them were able to subdue the plaintiff

and she placed handcuffs on him. (Doc. 18, Curvin Aff. at 2.)

Defendant Curvin alleges that she used only the minimum amount of force necessary to protect herself and the security interests of the jail, including the jail staff and inmates. (Doc. 18, Curvin Aff. at 2.) Curvin maintains that once the plaintiff was restrained and the threat was over, no additional force was used. (Doc. 18, Curvin Aff. at 2.) Defendant Curvin states that at no time during or after the incident did she observe any injury to the plaintiff or any condition that would indicate a need for medical attention. (Doc. 18, Curvin Aff. at 2.) She stresses that the plaintiff did not request medical attention at any point during or after the altercation. (Doc. 18, Curvin Aff. at 2.)

    4.    <u>Jail Administrator Barbara Smith</u>.

Barbara Smith, Calhoun County Jail Administrator, states that it is the policy of the Calhoun County Sheriff's Department "that members of the jail staff receive and answer any and all inmate grievances." (Doc. 17, Ex. G, Smith Aff. at 3.) Smith claims that "[a]ll inmates are made aware of the grievance procedure via the Calhoun County Jail Rulebook which they receive upon their arrival at the jail." (Doc. 17, Ex. G, Smith Aff. at 3.) She asserts that forms are readily available in the jail for inmates to write grievances and give them to jail staff. (Doc. 17, Ex. G, Smith Aff. at 3.) She further asserts that inmates are furnished these forms "at any time they request one." (Doc. 17, Ex. G, Smith Aff. at 3.) Smith notes that an exception exists for grievances of an emergency nature, which can be made orally. (Doc. 17, Ex. G, Smith Aff. at 3.) She contends that as Jail Administrator, it is her responsibility to respond to the inmate's grievance and, if an inmate is dissatisfied with her response, the inmate may appeal that response within seventy-two (72) hours. (Doc. 17, Ex. G, Smith Aff. at 3.) Smith maintains that copies of all grievances are kept on file at

the jail and organized by the month in which the grievance was made. (Doc. 17, Ex. G, Smith Aff. at 3.)

C.  **Plaintiff's Response.**

In his response, the plaintiff contests the defendants' assertion that he did not suffer any physical injury as a result of the June 28, 2006, altercation. (Doc. 34 at 2.) He states that the defendants denied him medical treatment following the alleged assault and knew, or should have known, that the plaintiff had been injured "in his stomach area and throat." (Doc. 34 at 2.) The plaintiff further contends that the defendants have failed to provide their policy regarding excessive force. (Doc. 34 at 2.) Lastly, the plaintiff claims that there is a videotape of the alleged assault that should be reviewed by the court. (Doc. 34 at 2.)

### III.  DISCUSSION.

The defendants argue that the plaintiff's claims are due to be dismissed because he failed to exhaust his administrative remedies. The issue of exhaustion must be addressed prior to a review of the defendants' motions for summary judgment.

In 1996, Congress enacted the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") in an attempt to control the flood of prisoner lawsuits. Title 42 U.S.C. § 1997(e), as amended by the PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

It is clear that the plaintiff's complaints regarding the officers' alleged use of excessive force against him concern the conditions under which he was confined in the Calhoun County Jail. It is also clear that the Calhoun County Jail has an institutional inmate grievance procedure through

which inmates may present such claims to jail administrators for resolution. Specifically, under the grievance procedure, forms are readily for inmates to write grievances and give them to jail staff. The Jail Administrator responds to the inmate's grievance and, if an inmate is dissatisfied with the jail administrator's response, the inmate may appeal that response within seventy-two (72) hours.

In his complaint, the plaintiff states that he filed a grievance but prison officials failed to respond. Jail Administrator Barbara Smith maintains that copies of all grievances are kept on file at the jail. The defendants attached a copy of the plaintiff's inmate file to their motions for summary judgment; however, no grievance concerning the June 28, 2006, incident was found in the plaintiff's inmate file. (Doc. 25, Ex. H.) Nevertheless, on a motion for summary judgment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. As such, the court will take as true the plaintiff's allegation that he filed a grievance concerning the June 28, 2006, altercation and the defendants failed to respond to the same.

In *Alexander v. Hawk*, the Eleventh Circuit Court of Appeals discussed the amendment of 42 U.S.C. § 1997e(a) by the PLRA, concluding that "Congress now has mandated exhaustion," and that "exhaustion is now a pre-condition to suit [by a prisoner]." 159 F.3d 1321, 1325-26 (11th Cir. 1998). It appears that the plaintiff is attempting to excuse his failure to exhaust the administrative procedure on jail officials' failure to respond to his grievance. However, to the extent the plaintiff contends that jail officials' failure to respond to his grievance renders the grievance procedure inadequate or futile, such argument is without merit. The Eleventh Circuit has held that "the judicially recognized futility and inadequacy exceptions [that had existed under former § 1997e(a)] do not survive the new mandatory exhaustion requirement of the PLRA." *Alexander v. Hawk*, 159

F.3d 1321, 1325 (11th Cir. 1998). Indeed, the United States Supreme Court, interpreting the intent of Congress, concluded that exhaustion of administrative remedies is now mandatory even if the procedures to do so do not meet certain "minimum acceptable standards" of fairness and effectiveness, and courts cannot excuse exhaustion even when it would be "appropriate and in the interest of justice." *Booth v. Churner*, 532 U.S. 731, 740 n.5 (2001). As such, the plaintiff's failure to complete the administrative process cannot be excused on the basis of futility.

Moreover, the fact that the plaintiff has been transferred from the Calhoun County Jail to a state prison does not excuse his failure to exhaust his administrative remedies. The Eleventh Circuit has repeatedly affirmed the dismissal of prisoner complaints on the ground that the plaintiff failed to exhaust administrative grievance procedures, even when the prisoner had been transferred away from the jail at which the grievable incident occurred. *See Hall v. Richardson*, 144 Fed. Appx. 835 (11th Cir. 2005).

Inasmuch as it is undisputed that the plaintiff failed to fully utilize Calhoun County Jail's grievance procedure to resolve his complaints concerning excessive force, his claims are due to be DISMISSED WITHOUT PREJUDICE for his failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). A Final Judgment will be entered.

Done this 30th day of January, 2008.

_____
U.W. Clemon
United States District Judge